## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

ADRIENNE HARPER,

      Plaintiff,

v.

VECTRUS, INC.,
CHARLES PROW,
LOUIS J. GIULIANO,
BRADFORD J. BOSTON,
MARY L. HOWELL,
WILLIAM F. MURDY,
MELVIN F. PARKER,
ERIC M. PILLMORE,
STEPHEN L. WAECHTER, and
PHILLIP C. WIDMAN

      Defendants.

---

## COMPLAINT AND JURY DEMAND
## FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

---

Plaintiff, Adrienne Harper ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.    Plaintiff brings this stockholder action against Vectrus, Inc. ("Vectrus" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants"), Vertex Aerospace Services Holding Corp. ("Parent"), merger vehicles Andor Merger Sub Inc. ("Merger Sub" and collectively with Parent, "Vertex" and collectively with the Company and the Board, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Parent as a result of an unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2.    The terms of the Proposed Transaction were memorialized in a March 7, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Vectrus will become an indirect wholly-owned subsidiary of Vertex. At the close of the transaction, Vectrus public stockholders will own approximately 38% of the combined company.

3.    Thereafter, on April 27, 2022, Vectrus filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement Statement") with the SEC in support of the Proposed Transaction. On May 9, 2022, Vectrus filed a Definitive Proxy Statement on DEFM14A (the "Definitive Proxy Statement Statement") with the SEC in support of the Proposed Transaction.

4.    The Proposed Transaction is unfair for a number of other reasons. Significantly, the Proxy Statement describes an insufficient process in which the Board rushed through an

1

inadequate "sales process" in which no market check for potentially interested third parties was conducted and in which no special committee of independent and disinterested directors was created to run the sales process.

5.      In addition, no adequate explanation was given as to why the Board engaged multiple financial advisors at significant cost.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, on May 9, 2022, Defendants caused to be filed the materially deficient Proxy Statement.  The Proxy Statement is materially deficient, and is thus in violation of the Exchange Act.  As detailed below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Vectrus and Vertex, provided by Vectrus and Vertex management to the Board's financial advisors Goldman Sachs & Co. LLC ("Goldman Sachs") and Vertex's financial advisor RBC Capital Markets, LLC ("RBC"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs and/or RBC and provided to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9.      Plaintiff is a citizen of Indiana and, at all times relevant hereto, has been a Vectrus stockholder.

10.     Defendant Vectrus is a leading digital insurance platform in the United States. Vectrus is incorporated under the laws of the State of Indiana and has its principal place of business at 2424 Garden of the Gods Road, Suite 300, Colorado Springs, CO 80919.  Shares of Vectrus common stock are traded on the New York Stock Exchange under the symbol "VEC".

11.     Defendant Charles Prow ("Prow") has been a Director of the Company at all relevant times.  In addition, Prow serves as the Company's Chief Executive Officer ("CEO") and President.

12.     Defendant Louis J. Giuliano ("Giuliano") has been a Director of the Company at all relevant times.

13.     Defendant Bradford J. Boston ("Boston") has been a director of the Company at all relevant times.

14.     Defendant William F. Murdy ("Murdy") has been a director of the Company at all relevant times.

15.     Defendant Mary L. Howell ("Howell") has been a director of the Company at all relevant times.

16.     Defendant Melvin F. Parker ("Parker") has been a director of the Company at all relevant times.

17.     Defendant Eric M. Pillmore ("Pillmore") has been a director of the Company at all relevant times.

18.     Defendant Stephen L. Waechter ("Waechter") has been a director of the Company at all relevant times.

19.     Defendant Phillip C. Widman ("Widman") has been a director of the Company at all relevant times.

20.     Defendants identified in ¶¶ 11 - 19 are collectively referred to as the "Individual Defendants."

21.     Parent delivers integrated turnkey lifecycle support from concept definition, to engineering and manufacturing, through end of life support of complex systems and platforms, Vertex offerings include all levels of aviation maintenance, worldwide contractor logistics support, systems engineering and integration, specialized onsite mission execution, high consequence training programs for defense and commercial customers, and integrated supply-chain solutions.

22.     Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, have extensive contacts within this District; for example, the Company maintains its Principal Offices in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

26.     Vectrus, Inc. provides facility and base operations, supply chain and logistics, information technology mission support, and engineering and digital integration services. It offers facility and base operations services, such as facilities operations and maintenance, security, base life support, facilities engineering and management, airfield management, civil engineering, public works, transportation operations, and emergency services. The company also offers supply chain and logistics services, including warehouse management and distribution, asset management and logistics, integrated logistics, supply chain as a service, full spectrum aviation maintenance, repair and overhaul, and equipment maintenance, repair, and services. Additionally, it provides information technology mission support services comprising communications, management and service support, IT service management design and implementation, network and cybersecurity, systems installation and activation, and mission support. Further, the company offers engineering and digital integration solutions, such as perimeter security and intrusion detection, integrated electronic security monitoring and video management systems, systematic integrated security protection of physical assets, IP and computer systems, design and training, system-of-systems engineering and software development, advanced engineering, sensor and visualization technologies, energy solutions, and electromagnetic interoperability. Vectrus, Inc. was incorporated in 2014 and is headquartered in Colorado Springs, Colorado.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 9, 2021 Earnings Call announcing its 2021 Q3 financial results, the Company highlighted such milestones Revenue of $459.4 million, Operating Income of $12.9 million, and operating cash flow generation of $39.4 million.

28.     Speaking on these positive results, CEO Defendant Prow commented on the Company's positive results as follows, "We reported strong third quarter results that were underpinned by robust topline growth,"…... "In the third quarter, Vectrus recorded total and organic revenue growth of 30% and 13%, respectively."

29.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Vectrus.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

30.     Despite this upward trajectory, the Individual Defendants have caused Vectrus to enter into the Proposed Transaction without providing requisite information to Vectrus stockholders such as Plaintiff.

***The Flawed Sales Process***

31.     As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     Of significant import, it does not appear that a market check for potentially interested third parties was conducted by the Board or by anyone on its behalf during the sales process. Rather it appears that the goal from the outset was a transaction with Vertex.

33.     Additionally, the Definitive Proxy Statement is silent as to whether a committee of the Board composed of disinterested and independent members was created to run the sales process, and if so, their specific powers.

34.     Moreover, the Definitive Proxy Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and Vertex and whether this agreement differed from any other agreement with potentially interested third parties discussed

and/or not specifically mentioned by the Definitive Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

36.     On March 28, 2022, Vectrus and Vertex issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **COLORADO SPRINGS, Colo. and MADISON, Miss.,** March 7, 2022 /PRNewswire/ -- Vectrus, Inc. (NYSE: VEC) and The Vertex Company ("Vertex") today announced that they have entered into an all-stock merger to create a leading global provider of mission-essential solutions.
>
> The combined company will offer significantly expanded technology and service capabilities, delivering a comprehensive suite of integrated solutions and critical service offerings to support national security readiness and modernization initiatives around the world. As U.S. and allied government clients move toward a converged environment, the combined company will be well positioned to meet the mission-essential requirements of its clients while delivering cost savings, increased security and resiliency, and more strategic use of resources.
>
> Together, the combined company would have 2021 pro forma revenue of approximately $3.4 billion and adjusted EBITDA of approximately $283 million, inclusive of $20 million of estimated cost synergies, resulting in an adjusted EBITDA margin of more than 8%. With pro forma backlog of approximately $11.3 billion, the company has high revenue visibility and will benefit from increased scale, balance and diversity. With significant cash flow generation and a strong balance sheet, the combined company will retain flexibility for continued growth.
>
> "The combination of Vectrus and Vertex will create a stronger, more diversified company and one of the leading providers of critical mission solutions and support to defense clients globally," said Chuck Prow, Chief Executive Officer of Vectrus. "This highly strategic transaction builds on both companies' accomplishments over the last several years and significantly accelerates our ability to deliver converged solutions while providing enhanced value for our shareholders and other stakeholders."

Prow continued, "With increased scale and meaningful synergies, the combined company will be more competitive in the national security environment while enhancing the delivery of services to our federal clients. We look forward to combining the strengths of our businesses and teams to build upon both companies' proud track records of providing critical mission support for our clients' toughest operational challenges."

Ed Boyington, President and CEO of Vertex, said, "Vertex and Vectrus share mission-oriented foundations and cultural alignment. By joining forces with Vectrus, we will be better positioned to help the Department of Defense and government agencies achieve their objectives, and in the process, create a stronger organization with greater career development and advancement opportunities for our employees. On behalf of the Vertex team, we remain dedicated to our clients' missions, and we are very pleased to enter this new phase of growth as a combined company."

**Creating a Differentiated Industry Leader**

- Greater Scale and Improved Competitive Positioning – The combination creates a stronger company with greater scale and enhanced ability to compete for more integrated business opportunities. The company will benefit from a more diversified revenue base across geographies, clients, and contract types in supporting missions for the U.S. Department of Defense and other government agencies. The combined company's contract portfolio will also be more balanced across all agencies served.
- Enhanced Portfolio of Technologies and Solutions – The combined company will be uniquely positioned to better provide full life-cycle support to the most critical and enduring missions. The complementary breadth of capabilities builds on each company's leading position in their respective markets.
- Attractive Financial Profile and Efficient Capital Structure –The transaction is expected to be accretive to Vectrus's adjusted diluted earnings and free cash flow per share in the first full year following close. The combined company will have significant revenue visibility and expects to generate substantial free cash flow and a pro forma adjusted EBITDA margin profile of more than 8% initially, with plans to improve margins going forward. The combined company will maintain its low capital expenditure business model and benefit from significant tax attributes, allowing for rapid debt reduction. The company will target long-term net debt to EBITDA of 2.0 to 3.0x.
- Clearly Identified Cost Synergies and Incremental Revenue Opportunities – The combined company is expected to achieve approximately $20 million in annualized pre-tax net cost synergies by 2024 through efficiencies in supply chain and contract management, shared IT infrastructure, business systems right-sizing, and general corporate costs.

8

The combined capabilities also will create meaningful incremental revenue growth opportunities across the company's key addressable markets in operations and logistics, aerospace, training, and technology.

**Transaction Terms**

Under the terms of the merger agreement, Vertex shareholders will own approximately 62% of the combined company on a fully diluted basis, while Vectrus shareholders will own approximately 38%. The transaction implies a value for Vertex of approximately $2.1 billion, or approximately 9.5x 2021 adjusted EBITDA net of $20 million of cost synergies and the present value of Vertex's existing tax attributes of approximately $160 million.

**Leadership and Governance**

Upon closing of the transaction, Mr. Prow, CEO of Vectrus, will serve as CEO of the combined company, and Susan Lynch, CFO of Vectrus, will serve as CFO. The broader leadership team will be comprised of executives from both companies.

The combined company's Board of Directors will be comprised of 11 members, six directors from the current Vectrus board, including Mr. Prow, and five directors appointed by Vertex, including Mr. Boyington, President and CEO of Vertex. An independent member of the current Vectrus Board of Directors will serve as Chairman. The combined company plans to announce the members of the Board of Directors prior to closing.

The combined company will introduce a new name post-closing and will maintain its listing on the NYSE. The company will be headquartered in Northern Virginia, with a significant operating presence maintained in other key locations in the U.S. and around the world.

**Shareholder Rights**

At closing of the transaction, Vectrus will enter into a shareholders agreement containing certain rights and other terms relating to American Industrial Partners Capital Fund VI LP (AIP) shareholdings following the transaction, including board designation rights that adjust as AIP and the other Vertex shareholders reduce their ownership. Other terms include, among other things, that AIP will be subject to a standstill agreement for so long as it retains board designation rights and that AIP and Vertex's other shareholders will be subject to a six-month lockup agreement and thereafter will have customary registration rights.

*Potential Conflicts of Interest*

37.    The breakdown of the benefits of the deal indicate that Vectrus insiders are the

primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as

Plaintiff.  The Board and the Company's executive officers are conflicted because they will have

secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as

a public stockholder of Vectrus.

38.     Company insiders, currently own large, illiquid portions of Company stock all of

which will be exchanged for the merger consideration upon the consummation of the Proposed

Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably,

the Definitive Proxy Statement fails to provide an accounting of the merger consideration which

such shares will be exchanged for as follows:

| Name and Address of Beneficial Owner(1) | Number of Shares Beneficially Owned (Pre-Mergers)(2) | Percent of Class (Pre-Mergers) | Number of Shares Beneficially Owned (Post-Mergers)(2) | Percent of Class (Post-Mergers) |
|---|---|---|---|---|
| **Directors and Named Executive Officers of Vectrus** | | | | |
| Louis J. Giuliano(9) | 59,828 | * | 59,828 | * |
| Bradford J. Boston(10) | 22,579 | * | 22,579 | * |
| Mary L. Howell(11) | 26,319 | * | 26,319 | * |
| William F. Murdy(12) | 23,579 | * | 23,579 | * |
| Melvin F. Parker(13) | 11,577 | * | 11,577 | * |
| Eric M. Pillmore(14) | 29,579 | * | 29,579 | * |
| Stephen L. Waechter(15) | 31,579 | * | 31,579 | * |
| Phillip C. Widman(16) | 32,579 | * | 32,579 | * |
| Charles L. Prow(17) | 84,716 | * | 84,716 | * |
| Susan D. Lynch(18) | 5,282 | * | 5,282 | * |
| Susan L. Deagle(19) | 15,864 | * | 15,864 | * |
| Kevin T. Boyle(20) | 9,332 | * | 9,332 | * |
| Corinne L. Minton-Package(21) | 3,911 | * | 3,911 | * |
| Kenneth W. Shreves(22) | 6,051 | * | 6,051 | * |
| All executive officers and directors as a group (15 persons) | 371,070 | 3.1% | 371,070 | 1.2% |

39.    Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Definitive Proxy Statement provides the following accounting, it does not provide the specific amount of merger consideration such options will be exchanged for upon the consummation of the Proposed Transaction:

| Name | Vectrus RSUs | | Vectrus TSR Awards | | |
| --- | --- | --- | --- | --- | --- |
| | Number (#) | Value ($) | Target Value Granted ($) | Value ($)(1) | Total ($) |
| Charles L. Prow | 52,615 | 1,890,457 | 3,250,000 | 3,250,000 | 5,140,457 |
| *Chief Executive Officer* | | | | | |
| Susan D. Lynch | 14,025 | 503,918 | 750,000 | 750,000 | 1,253,918 |
| *Chief Financial Officer* | | | | | |
| Kevin T. Boyle | 8,342 | 299,728 | 512,500 | 512,500 | 812,228 |
| *ief Legal Officer, General Counsel and Corporate Secretary* | | | | | |
| Susan L. Deagle | 10,949 | 393,398 | 645,000 | 645,000 | 1,038,398 |
| *Chief Growth Officer* | | | | | |
| Corinne L. Minton-Package | 6,404 | 230,096 | 362,500 | 362,500 | 592,596 |
| *SVP, Operational Technology and Enterprise* | | | | | |
| Kenneth W. Shreves | 6,404 | 230,096 | 362,500 | 362,500 | 592,596 |
| *SVP, Business Organic Growth and Operational Enablement* | | | | | |

40.    Moreover, certain employment agreements with certain Vectrus executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

### Golden Parachute Compensation

| Name | Cash ($)(1) | Equity ($)(2) | Benefits ($)(3) | Total ($) |
| --- | --- | --- | --- | --- |
| Charles L. Prow | 7,797,688 | 1,890,457 | 22,207 | 9,710,352 |
| *Chief Executive Officer* | | | | |
| Susan D. Lynch | 2,511,916 | $  503,918 | 25,986 | 3,041,820 |

| *Chief Financial Officer* | | | | |
| Kevin T. Boyle | 1,963,646 | $ 299,728 | 25,986 | 2,289,360 |
| *Chief Legal Officer, General Counsel and Corporate Secretary* | | | | |
| Susan L. Deagle | 2,322,203 | $ 393,398 | 14,047 | 2,729,648 |
| *Chief Growth Officer* | | | | |
| Corinne L. Minton-Package | 1,324,225 | $ 230,096 | 10,828 | 1,565,149 |
| *SVP, Operational Technology and Enterprise* | | | | |
| Kenneth W. Shreves | 1,325,212 | $ 230,096 | 360 | 1,555,668 |
| *SVP, Business Organic Growth and Operational Enablement* | | | | |

41.   The Definitive Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.   Thus, while the Proposed Transaction is not in the best interests of Vectrus, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Definitive Proxy Statement***

43.   On May 9, 2022, the Vectrus Board and Vertex caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation the Exchange Act and in breach of their fiduciary duties, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural

fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.     Specifically, the Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Definitive Proxy Statement fails to disclose:

    a.  The specific reason no market check for potentially interested third parties was conducted by the Board or by anyone on the Board's behalf;

    b.  Specific information regarding whether a committee of the Board was created to run the sales process composed of independent and disinterested Directors, and if so, the specific powers of that committee;

    c.  Whether the confidentiality agreements entered into by the Company with Vertex differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

    d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Vertex, would fall away; and

    e.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Vectrus and Vertex's Financial Projections*

45.   The Definitive Proxy Statement fails to provide material information concerning financial projections for Vectrus and Vertex provided by Vectrus and Vertex management to the Board, Goldman Sachs, and RBC and relied upon by Goldman Sachs and RBC in their analyses. The Definitive Proxy Statement discloses management-prepared financial projections for the Company and Vertex which are materially misleading.

46.   The Definitive Proxy Statement should have, but fails to provide, certain information in the projections that Vectrus and Vertex management provided to the Board, Goldman Sachs, and RBC.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

47.   With regard to the *Vectrus Standalone Forecasted Financial Information* Projections prepared by Vectrus Management, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

a.      Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings before

interest, taxes, depreciation and amortization, as adjusted for one-time non-recurring items (as applicable); and

b.      Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: Operating Income (including the sub metric of operating income), Cash taxes applicable to operating income, Capital Expenditures, changes in net working capital, and adjustments for other cash flow items (including the sub metrics of changes in accrued and deferred taxes, changes in other assets and liabilities, and one-time non-recurring cash expenses).

48. With regard to the *Vertex Standalone Forecasted Financial Information* Projections prepared by Vertex Management, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

a.      Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings before interest, taxes, depreciation and amortization, and the specific adjustments made for one-time non-recurring items (as applicable); and

b.      Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: Operating Income (including the sub metric of operating income), Cash taxes applicable to operating income, Capital Expenditures, changes in net working capital, and adjustments for other cash flow items (including the sub metrics of changes in accrued and deferred taxes, changes in other assets and liabilities, and one-time non-recurring cash expenses) and cash-equivalent interest

expense from preferred equity.

49.     With regard to the *Pro Forma Combined Company Forecasted Financial Information* Projections prepared jointly by Vectrus and Vertex Management, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

   a.   Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings before interest, taxes, depreciation and amortization, and the specific adjustments made for one-time non-recurring items (as applicable);

   b.   Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: Operating Income (including the sub metric of operating income), Cash taxes applicable to operating income, Capital Expenditures, changes in net working capital, and adjustments for other cash flow items (including the sub metrics of changes in accrued and deferred taxes, changes in other assets and liabilities, and one-time non-recurring cash expenses); and

   c.   Synergies, including all underlying necessary metrics, adjustments, and assumptions utilized, including specifically: projected cost savings presented on a pre-tax basis, net of savings returned to customers as contractually required.

50.     The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

51.     This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.     Without accurate projection data presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Golman Sachs', or RBC's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

53.     In the Definitive Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

54.     With respect to the *Illustrative Discounted Cash Flow Analysis*, the Definitive Proxy Statement fails to disclose the following:

      c.    Regarding the *Vectrus Standalone* section:

          i.   The specific inputs and assumptions used to determine the range of discount rates of 7.5% to 8.5%;

         ii.   Vectrus's weighted average cost of capital utilized;

        iii.   The specific range of illustrative terminal values for Vectrus calculated;

        iv.   The specific inputs and assumptions used to determine the terminal year multiple range of 7.5x to 9.5x as applied to Vectrus's EBITDA;

v. The inputs and assumptions used to determine the utilized perpetuity growth rates ranging from (1.1%) - 1.6%;

vi. The company specific inputs used to determine discount rates, including but not limited to, Vectrus' target capital structure weightings, the cost of long-term debt, future applicable marginal cash tax rate, and the beta for Vectrus;

vii. Vectrus's net debt as of December 31, 2021; and

viii. The implied total number of fully diluted shares of Vectrus common stock utilized.

d. Regarding the *Vectrus Pro Forma*:

i. The specific inputs and assumptions used to determine the range of discount rates of 7.0% to 8.0%;

ii. Vectrus's weighted average cost of capital utilized;

iii. The specific range of terminal values for Vectrus calculated;

iv. The specific inputs and assumptions used to determine the terminal year multiple range of 8.5x to 10.5x as applied to Vectrus's EBITDA;

v. The inputs and assumptions used to determine the utilized perpetuity growth rates ranging from (1.1%) - 1.3%;

vi. The company specific inputs used to determine discount rates, including but not limited to, Vectrus' target capital structure weightings, the cost of long-term debt, future applicable marginal cash tax rate, and the beta for Vectrus;

vii. The specific adjustments for depreciation and amortization, and changes

in working capital made;

viii.   Vectrus's net debt as of December 31, 2021; and

ix.   The implied total number of fully diluted shares of Vectrus common stock utilized.

55.   With respect to the *Illustrative Present Value of Future Share Price Analysis — Vectrus Standalone* section, the Definitive Proxy Statement fails to disclose the following:

i.   The specific inputs and assumptions used to determine the illustrative range of EBITDA multiples of 6.5x to 8.5x;

ii.   The input used for projected net debt as of December 31, 2023, 2024, and 2025, respectively which were utilized;

iii.   The number of fully diluted shares of Vectrus common stock currently outstanding;

iv.   The Company's Cost of Equity;

v.   The inputs, metrics, and assumptions used to determine a discount rate of 8.75%; and

vi.   The utilized certain company-specific inputs, including a beta for Vectrus, as well as certain financial metrics for the U.S. financial markets generally.

56.   With respect to the *Illustrative Present Value of Future Share Price Analysis — Vectrus Pro Forma* section, the Definitive Proxy Statement fails to disclose the following:

vii.   The specific inputs and assumptions used to determine the illustrative range of EBITDA multiples of 7.5x to 9.5x;

viii.   The input used for projected net debt as of December 31, 2023, 2024,

and 2025, respectively which were utilized;

ix.    The number of fully diluted shares of Vectrus common stock currently outstanding;

x.    The Company's Cost of Equity;

xi.    The inputs, metrics, and assumptions used to determine a discount rate of 8.75%; and

xii.    The utilized certain company-specific inputs, including a beta for Vectrus, as well as certain financial metrics for the U.S. financial markets generally.

57.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

58.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Vectrus stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

59.    Plaintiff repeats all previous allegations as if set forth in full herein.

60.    Defendants have disseminated the Definitive Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

61.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection

with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or

instrumentality of interstate commerce or of any facility of a national securities

exchange or otherwise, in contravention of such rules and regulations as the [SEC]

may prescribe as necessary or appropriate in the public interest or for the

protection of investors, to solicit or to permit the use of his name to solicit any

proxy or consent or authorization in respect of any security (other than an

exempted security) registered pursuant to section 78*l* of this title.

62.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy

statement, form of proxy, notice of meeting or other communication, written or

oral, containing any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the

same meeting or subject matter which has become false or misleading.

63.     The Definitive Proxy Statement was prepared in violation of Section 14(a) because

it is materially misleading in numerous respects and omits material facts, including those set forth

above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Definitive Proxy Statement is materially misleading and omits material facts that are necessary

to render them non-misleading.

64.     The Individual Defendants had actual knowledge or should have known of the

misrepresentations and omissions of material facts set forth herein.

65.     The Individual Defendants were at least negligent in filing a Definitive Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

66.     The misrepresentations and omissions in the Definitive Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

67.     Plaintiff repeats all previous allegations as if set forth in full herein.

68.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Definitive Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Definitive Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Definitive Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Definitive Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Vectrus's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Definitive Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Definitive Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.     The Individual Defendants acted as controlling persons of Vectrus within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Vectrus to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Vectrus and all of its employees.  As alleged above, Vectrus is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise comply with the Exchange Act and disseminate a Definitive Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 9, 2022                              **BRODSKY & SMITH, LLC**

                              By:        */s/ Marc L. Ackerman*
                                         Marc L. Ackerman
                                         Two Bala Plaza, Suite 805
                                         Bala Cynwyd, PA 19004
                                         Phone: (610) 667-6200
                                         Fax:    (610) 667-9029
                                         Email: mackerman@brodskysmith.com

                                         *Counsel for Plaintiff*